UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KRISTEN NEWMAN and STEVEN NEWMAN,<br><br>       *Plaintiff*<br>v.<br><br>GABRIEL HOMEOWNERS ASSOCIATION, INC., STEPHANIE ADAMS FRATELLO, BILL DARES, and WAYNE THOMAS<br><br>       *Defendants* | Docket No. _____ |

## **COMPLAINT**

  Plaintiffs, KRISTEN NEWMAN and STEVEN NEWMAN, by and through undersigned counsel, hereby file this Complaint and sue GABRIEL HOMEOWNERS ASSOCIATION, INC., STEPHANIE ADAMS FRATELLO, BILL DARES, and WAYNE THOMAS, (collectively referred to as "Defendants") for declaratory and injunctive relief, actual and punitive damages and attorneys' fees and costs, pursuant to the Fair Housing Amendments Act, 42 U.S.C. § 3601, *et. seq.* Plaintiffs also bring a state law claim under the Louisiana Equal Housing Opportunity Act. Finally, Plaintiff KRISTEN NEWMAN brings a state law claim of negligence against Defendant Gabriel.

## **INTRODUCTION**

1. Plaintiffs Kristen Newman and Steven Newman seek relief from Defendants' ongoing refusal to provide reasonable accommodation for Ms. Newman's assistance animals and subsequent interference with their fair housing rights. Ms. Newman is an individual with mental impairments who requires the use of two assistance dogs. Although Ms. Newman informed

1

Defendants that she needed her dogs to alleviate the symptoms of her disabilities and submitted medical documentation in support, Defendants denied her request for accommodation to make an exception to its policy prohibiting Doberman Pinschers. Subsequently, Defendants have engaged in a continuously-escalating pattern/practice of harassment of Plaintiffs, which includes ongoing threats to "fine" Plaintiffs, threats to lock Plaintiffs out of the entryway reserved for homeowners, and threats of the commencement of frivolous litigation. Most recently, Defendants have threatened Plaintiffs with a hard deadline of December 25, 2019 to "remove the canines." According to Defendants, failure of Plaintiffs to comply with their unilateral deadline and baseless demands will result in the imposition of fines or other unspecified actions.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. § 3613(a)(1) as Plaintiffs' claims under the Fair Housing Amendments Act arise under federal law. This Court has supplemental jurisdiction over Plaintiff's state-law claims as they arise out of the same facts and which are the basis of Plaintiffs' federal cause of action.

3. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. §§ 1391(b)(1), (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Jefferson Parish, Louisiana and because Defendant resides in the judicial district.

## PARTIES

4. Plaintiff KRISTEN NEWMAN is a person of full age of majority and resident of Jefferson Parish, Louisiana. She is an individual with mental impairments that substantially limit one or more life activities, qualifying him as a person with a disability ("handicap") under the Fair Housing Amendments Act, 42 U.S.C. § 3601, *et. seq*. At all material times relevant to this lawsuit, Ms. Newman, along with her husband, Steven Newman, owned a home in the Gabriel

2

Development in Kenner, Louisiana. Prior to approximately March of 2019, Ms. Newman went by the name of Kristen Briseno.

5. Plaintiff STEVEN NEWMAN is a person of full age of majority and resident of Jefferson Parish, Louisiana. At all times relevant to this lawsuit, Plaintiff Newman co-owned a home in the Gabriel Development with Ms. Newman. Plaintiff Newman is Ms. Newman's spouse and is therefore associated with a person with a disability.

6. Defendant GABRIEL HOMEOWNERS ASSOCIATION, INC. is a non-profit corporation organized and existing under the laws of the State of Louisiana with its principle place of business in Louisiana.

7. Defendant STEPHANIE ADAMS FRATELLO is a person of full age of majority and resident of Jefferson Parish, Louisiana. Defendant Fratello is the President of the Gabriel Homeowners Association and directly participated in discriminatory actions denying Ms. Newman's request for accommodation.

8. Defendant BILL DARES is a person of full age of majority and resident of Jefferson Parish, Louisiana. Defendant Dares is the Secretary of the Gabriel Homeowners Association and directly participated in the discriminatory actions denying Ms. Newman's request for accommodation.

9. Defendant WAYNE THOMAS is a person of full age of majority and resident of Jefferson Parish, Louisiana. Defendant Thomas is the Vice President of the Gabriel Homeowners Association and directly participated in the discriminatory actions deny Ms. Newman's request for accommodation.

## STATEMENT OF FACTS

10. The Gabriel Development is a single-family subdivision located in Kenner, Louisiana made up 251 Lots.

11. The Gabriel Homeowners Association, Inc. (hereinafter the "Association") is a Louisiana non-profit organization created by Declaration of Deed Restrictions, Covenants, Conditions, and Restrictions for Gabriel (hereinafter the "Gabriel Covenants").

12. Pursuant to the powers and authority granted in the Gabriel Covenants, the Association is the governing body for all of the Lot owners and is responsible for the administration and operation of the Gabriel Development. The Association is a non-profit corporation, and its members are all of the Lot Owners. The Association is governed by a six-member Board of Directors.

13. The Gabriel Covenants allow the Board to enforce its restrictions through the imposition of daily fines, liens, and restricting use of Common Areas.

14. Plaintiff KRISTEN NEWMAN is an individual with multiple impairments, including serious anxiety and depression, which substantially limit one or more life activities. She is a person with a disability as defined by the federal Fair Housing Amendments Act, 42 U.S.C. § 3601, *et. seq.*

15. To alleviate the symptoms of her disability, Ms. Newman requires the use of two assistance animals, Doberman Pinschers named "Bossy" and "Bear."

16. Ms. Newman obtained Bossy and Bear in 2016 as therapeutic assistance animals at the recommendation of her treating psychologist.

17. In April, 2018, Plaintiffs purchased a single-family dwelling located on Lot 137 of Gabriel Development.

18. On April 18, 2018, Ms. Newman spoke to Carrie Ezell, the secretary of the HOA. During this conversation, Ms. Newman learned that the Board was concern as to the presence of her service animals.

19. Ms. Ezell provided the Deed Restrictions via email, and Ms. Newman stated that she would provide Ms. Ezell with her doctor's note confirm that her dog was an emotional support animal.

20. Shortly thereafter, Ms. Newman provided the Association her doctor's note prescribing her a therapeutic assistance animal.

21. On May 10, 2018, Ms. Newman had a phone call with Carrie Ezell, the secretary of the HOA. Ms. Ezell said that the doctor's note would not be enough. Ms. Ezell informed Ms. Newman that the major concern was with someone placing their hand through Plaintiffs' back fence. Ms. Ezell suggested that erecting a brick wall or installing shrubbery around the existing metal fence would be sufficient.

22. Ms. Ezell stated that Cleyera was an approved plant and frequently used as a privacy barrier within the neighborhood.

23. Thereafter, Plaintiffs commenced work to install shrubbery around their metal fence. This installation was approved by the Association. The installation of the shrubbery was done at a cost of approximately $5,000.00.

24. While working to comply with Ms. Ezell's "shrubbery" proposal, Ms. Newman decided to retain counsel to explain the requirements of the Fair Housing Act to Defendants.

25. On June 6, 2018, Ms. Newman provided written information Ms. Ezell in regard to what an emotional support animal is and the laws that govern them.

26. On October 1, 2018, Plaintiffs received a letter from the Board asserting that she was in violation Section 10.14 of the Gabriel Covenants, which contains a Breed Restriction prohibiting Owners from keeping Doberman Pinschers as pets. The letter threatened penalties, including fines, if Plaintiffs did not correct the purported violation.

27. The next day, Ms. Newman met with Brian Krantz, who informed Ms. Newman that the a would impose fines if she did not remove her dog from the premises.

28. On October 3, 2018, Ms. Newman asked to put metal sheeting on her fence to address the Board concerns with people sticking their hand through the fence. This request was denied.

29. On October 17, 2018, Ms. Newman, through her legal representative, wrote to the Board and requested a reasonable accommodation to the Gabriel Covenants' Breed Restriction to allow her to keep Bossy. Plaintiffs' representative informed the Board that Ms. Newman was an individual with a disability and that she had been prescribed an assistance animal for its therapeutic effects. The representative further explained that Bossy relieved the symptoms of Ms. Newman's disability that allowing Ms. Newman to keep the assistance animal without penalty or further enforcement action was necessary for Ms. Newman to use and enjoy her dwelling.

30. Out of a good faith desire to deescalate the situation, Ms. Newman moved Bear to a family member's house, but kept Bossy while awaiting the Board's response.

31. Months went by, and Plaintiffs received no response from the Board.

32. While Bear was living with a family member, Ms. Newman's symptoms worsened. She suffered frequent anxiety attacks and manifestations of her disability. As a result, Ms. Newman's psychologist recommended that she bring Bear home because of Bear's therapeutic benefit.

33. In June 2019, Plaintiffs received notice that the Board had resolved to increase the potential penalty for violating the Gabriel Covenants from $150.00 per day to $300.00. The resolution further provided that potential penalties for violations would include restricted access to the Development's Common Areas.

34. On June 20, 2019, Plaintiffs received a "Second Notice of Violation and Request for Hearing Letter." This letter informed Plaintiffs that the Board had received her October, 2018

reasonable accommodation request regarding Bossy, but that the Board needed to meet Bossy to "evaluate [his] demeanor." The letter also informed Plaintiffs that they had observed Bear on the premises, and that Plaintiffs would be subject to fines and other penalties for keeping a second Doberman Pinscher in violation of the Breed Restriction.

35.     On July 5, 2019, Plaintiffs, through their representative, submitted a second letter to the Board requesting reasonable accommodation for Bossy and Bear. Plaintiffs attached a note from Ms. Newman's doctor verifying Ms. Newman's disability and need for the animals. The request for reasonable accommodation/modification stated that "regular and routine contact with [Ms. Newman's] two therapy dogs is necessary to alleviate Ms. Newman's symptoms."

36.     On July 9, 2019, Association President Defendant Stephanie Adams Fratello spoke with Plaintiffs' representative on the phone. Defendant Fratello indicated that the Board would be amenable to Plaintiffs submitting a letter from a veterinarian describing the dogs' demeanor in lieu of a meeting with the Board. However, Defendant Fratello requested that Plaintiffs agree to indemnify the Association for any injuries caused by the dogs.

37.     On August 1, 2019, Plaintiffs, through their representative, provided Defendant Fratello with a letter from a veterinarian stating that the animals were trained, well-behaved, and posed "zero threat" to others. However, Plaintiffs declined the Board's request for indemnification, citing U.S. Department of Housing and Urban Development ("HUD") guidance that states that imposing conditions on reasonable accommodations (including insurance), violates the Fair Housing Act. Plaintiffs offered to meet with the Board to further discuss Ms. Newman's request for accommodation.

38.     By letter dated August 18, 2019, the Board denied Plaintiffs' request for accommodation and demanded that Plaintiffs remove Bear and Bossy before September 18, 2019. The Board

threatened that failure to timely remove the dogs "may result in finding [Plaintiffs] in noncompliance of the Deed Restrictions," at which point the "Board will be entitled to enforce the Deed Restrictions" including by "restrict[ing] use of the new access enhancements once launched."

39. The "new access" enhancements include an entranceway reserved for homeowners. Those who do not have access must use a guest entrance, which requires showing proof of identification to a security guard.

40. In response to the letter, Plaintiff shared with the Board that she had insurance coverage for her dogs. Plaintiff requested to meet with the Board in person to discuss the accommodation and requested that the Board reconsider its decision.

41. On October 2, 2019, Plaintiffs and her representative met with the Board to discuss the accommodation request. Adams, Emerman, Dares, and Thomas were present. Defendants shared that they had allowed a person with a physical disability to keep a service animal despite the Breed Restrictions, but would not make an exception for therapeutic assistance animals. Defendants denied Ms. Newman's request for accommodation.

42. During the October 2, 2019, meeting, Defendant Adams stated "We are going to be sued one way or another, so just sue us" to Ms. Newman and her attorney.

43. During the meeting, Ms. Newman requested that the Association amend the Gabriel Covenants to include emotional support animals. This proposal was summarily rejected on the basis that not enough residents of the community would show up for a vote.

44. During the same meeting, Defendant Thomas told a story of a Doberman Pincher running lose approximately twenty or thirty years ago and biting his child. Defendant Thomas stated that there are people waiting to sue over the emotional distress that has already been caused by the presence of Ms. Newman's emotional support animals.

45.     Based on information and belief, Plaintiffs concluded that Defendant Thomas intends on suing the Association for its purported failure to enforce its Breed restrictions.

46.     In context, Plaintiff understood the true purpose of the Board's insistent demand for indemnification, namely, avoiding expense associated with a lawsuit by Defendant Thomas for his purported "emotional distress." Without indemnification, the Association would bear the cost of frivolous litigation by Defendant Thomas. In contrast, if Ms. Newman signs a sweeping indemnification agreement for any claims that might arise from her keeping her service animals, Ms. Newman will solely bear the cost of any litigation against the Association initiated by Defendant Thomas.

47.     Plaintiffs offered to sign an indemnification agreement solely as to personal injury, *e.g.*, dog bites. This proposal was rejected by Defendants, who continued to insist on sweeping indemnification.

48.     Given his predisposition against Ms. Newman's emotional support animals and his statements about people waiting to sue over the "emotional distress" associated with the presence of Ms. Newman's emotional support animals, it is reasonable to conclude that Defendant Thomas would resort to frivolous litigation in furtherance of his effort to force the removal of Ms. Newman's service animals.

49.     On November 15, 2019, Ms. Newman had a conversation with Defendant Dares via telephone regarding the ongoing issue with her emotional support animals. During this conversation, Defendant Dares states that the Association is "above federal law because its covenants were written prior to the passage of the Fair Housing Act."

50.     During the same conversation, Ms. Newman reiterated her prior request that the Association amend the Gabriel Covenants to include emotional support animals. Defendant Dares

rejected this proposal, claiming that not enough residents of the community would show up for a vote.

51. On November 25, 2019, Plaintiffs received a letter from Defendants stating the following:

> Since our last meeting, we have not received a response form you regarding whether a decision has been made regarding whether the canines will be certified as service animals or whether you agree to the indemnification that the Board has requested.
>
> The Board met on November 6, 2019 for a general meeting and it was discussed and decided that you have 30 days to do one of the following: 1) indemnify the HOA, 2) commence certification of the canines as service animals, 3) or remove the canines. Failure to do any of these will result in a fine and/or action as set forth in the deed restrictions.

52. Defendants' demand for sweeping indemnification or undefined "certification" constitutes a burden on a person with a disability or a reasonable accommodation and, thus, is impermissible under the Fair Housing Act.

53. Upon information and belief, absent immediate action by this Court, Defendants will begin to "fine" Plaintiffs or take other, unspecified adverse action.

## CAUSES OF ACTION

### First Cause of Action

Violation of the Fair Housing Amendments Act
(42 U.S.C. § 3601, *et seq*. and 24 C.F.R. § 100.1, *et. seq*)

54. Plaintiffs re-alleges and incorporates by reference all allegations in all preceding paragraphs.

55. Defendant has discriminated against Plaintiff KRISTEN NEWMAN, a disabled individual, by refusing to provide a reasonable accommodation in violation of 42 U.S.C. § 3604(f)(3)(b), 24 C.F.R. § 100.204.

56. Defendant has discriminated against Plaintiff KRISTEN NEWMAN, a disabled individual, by discriminating in the terms, conditions, or privileges of sale of a dwelling, or in the

provision of services or facilities in connection with such dwelling, in violation of 42 U.S.C. § 3604(f)(2), 24 C.F.R. §100.202(b).

57. Defendant has coerced, intimidated, threatened, or interfered with Plaintiff KRISTEN NEWMAN, a disabled individual, in the exercise or enjoyment of rights guaranteed by the Fair Housing Act, in violation of 42 U.S.C. § 3617, 24 C.F.R. § 100.400.

58. As a result of the conduct and actions of Defendants, Plaintiff KRISTEN NEWMAN suffered emotional and mental anguish, depression, anxiety, economic loss, inconvenience, deprivation of civil rights, and physical injury.

59. Defendants discriminated against Plaintiff Steven Newman as a person associated with an individual with a disability.

60. As a result of the conduct and actions of Defendants, Plaintiff Steven Newman suffered emotional and mental anguish, anxiety, and economic loss.

61. By and through their conduct, Defendants acted with malice or with reckless indifference that their actions might violate a federal statute of which they were aware.

62. Pursuant to 42 U.S.C. § 3613(c), Plaintiffs are entitled to recover actual and punitive damages and reasonable attorney's fees and costs.

63. Pursuant to 42 U.S.C. § 3613(c)(1), Plaintiffs are entitled to an injunction enjoining Defendants from enforcing the Breed Restriction in the Gabriel Covenants and assessing or collecting any fines or other penalties for alleged violations of the Breed Restriction.

<u>Second Cause of Action</u>
Violation of the Louisiana Equal Housing Opportunity Act
(L.S.A.-R.S. § 51:2606)

64. Plaintiff re-alleges and incorporates by reference all allegation in all preceding paragraphs.

65.     Under the relevant jurisprudence, a violation of the Fair Housing Amendments Act

66.     Defendants have discriminated against Plaintiff KRISTEN NEWMAN, a disabled individual, in exercise or enjoyment of rights guaranteed by the Louisiana Equal Housing Opportunity Act, in violation of L.S.A.-R.S. § 51:2606.

67.     Defendants discriminated against Plaintiff Steven Newman as a person associated with an individual with a disability.

68.     Pursuant to L.S.A.-R.S. § 51:2613, Plaintiffs are entitled to recover actual and punitive damages and reasonable attorney's fees and costs.

Third Cause of Action
(Negligent Training and Supervision)

69.     Plaintiff KRISTEN NEWMAN re-alleges and incorporates by reference all allegations in all preceding paragraphs.

70.     Under Louisiana law, Defendant Gabriel had a duty to avoid causing injury and harm to Plaintiff KRISTEN NEWMAN.

71.     Under Louisiana law, Defendant Gabriel was negligent in the supervision and training of its employees and/or agents (including the board members), insofar as the supervision and training lapses provided Defendant's employees/agents with an opportunity to deny Ms. Newman's request for reasonable accommodation and to harass Ms. Newman. These lapses were the proximate cause of foreseeable injury to Ms. Newman, to whom Defendant Gabriel owes a duty of care.

72.     Upon information and belief, Defendant Gabriel provided its employees/agent with no training or inadequate training related to reasonable accommodation requests, individuals with disabilities, and harassment.

73.     Upon information and belief, Defendant Gabriel performed no background check on its employees/agents and failed to evaluate whether they had a history and/or pattern of harassment.

74. By and through the actions of its employees/agents, Defendant Gabriel breached its duty to Ms. Newman.

75. But for the actions of Defendant Gabriel and its employees/agents, Ms. Newman would not have suffered the injuries and damages that are at issue in this Complaint

76. As a result of Defendant Gabriel's conduct, Ms. Newman has suffered harms including physical injury, anxiety, frustration, humiliation, embarrassment, disempowerment, segregation, fear, anxiety, mental anguish, emotional distress, and legal expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendant as follows:

A. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, finding that the foregoing discriminatory actions and practices of Defendants violate the Fair Housing Act, 42 U.S.C. § 3604(f), and 42 U.S.C. § 3617;

B. Enter a permanent injunction pursuant to 42 U.S.C. § 3613(c)(1), restraining Defendant, its agents, employees, and all other persons in active concert or participating with it from discriminating against Plaintiffs or against any other person with disabilities in violation of the Fair Housing Act.

C. Order that Defendant provide equal housing opportunities to all prospective and in-place residents, undertake comprehensive fair housing training, implement non-discrimination policies, including procedures for the granting of reasonable accommodations, and submit to monitoring of its practices and records in order to ensure compliance with fair housing laws.

D. Award appropriate general damages and costs to Plaintiff KRISTEN NEWMAN for Defendant Gabriel's negligence.

E. Award appropriate general and special damages to Plaintiffs, to fully compensate them for the injury and loss caused by Defendants' discriminatory housing practices, see 42 U.S.C. § 3613(c)(1).

F. Award appropriate punitive damages to Plaintiffs for Defendant's intentional and/or willful acts made in disregard of their federally protected rights, see 42 U.S.C. § 3613(c)(1).

G. Award Plaintiffs reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; see 42 U.S.C. § 3613(c)(2).

H. Grant such other and further relief as may be just and proper.

Date:  January 6, 2020

Respectfully submitted,

/s/ Garret S. DeReus_____
BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

***AND***

PETER THEIS
Louisiana Bar No. 34786
ELIZABETH OWEN
Louisiana Bar No. 33620
LOUISIANA FAIR HOUSING ACTION CENTER

1340 Poydras Street, Suite 710
New Orleans, LA 70112
Tel: (504) 596-2100
Email: eowen@gnofairhousing.org
Email:  peter@gnofairhousing.org

Case 2:20-cv-00046-NJB-DPC Document 1 Filed 01/06/20 Page 15 of 15